UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHARLES GRANT BROOKS,

         Plaintiff,

v.

GRETCHEN WHITMER et al.,

         Defendants.
_____/

Case No. 1:22-cv-574

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim upon which relief can be granted. The Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court will dismiss those claims without prejudice.

## I.     Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. Plaintiff sues Michigan Governor Gretchen Whitmer; JCF Health Unit Manager Sirena Landfair; JCF Corrections Officers Unknown Captain, Unknown Lieutenant, and Sergeant St. Charles; and JCF Nurses Karmen

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Bussell, Patricia Lamb, and Sara J. Cummins. Plaintiff sues each Defendant in his or her official capacity.

Plaintiff alleges that over a one-week period from December 8, 2021, through December 14, 2021, the JCF Defendants were deliberately indifferent to Plaintiff's serious medical needs. Plaintiff reports that during early December 2021, a blood test revealed some abnormal results. Plaintiff's medical provider ordered a chest x-ray to rule out pneumonia. (Clinical Encounter-Administrative Notes, ECF No. 1-1, PageID.21.)

Plaintiff was disappointed that the x-ray was not scheduled immediately. When he continued to encounter difficulty in breathing, he complained over the next couple of days. Eventually, on December 11, 2021, he was transported to a local hospital. He underwent an x-ray. The health care providers concluded that he was not suffering from pneumonia; instead they concluded he was experiencing asthma symptoms. They treated Plaintiff with steroids and discharged him with a prescription to continue on oral steroids. Plaintiff was not seen immediately upon his return to the facility. In fact, three days passed before Plaintiff was examined and the steroid prescription was filled.

Plaintiff contends that the delays in initially scheduling the x-ray, delays in deciding to send Plaintiff to the hospital for the x-ray, delays in effecting his transport, and failing to promptly examine Plaintiff and provide oral steroids upon his return constitute deliberate indifference to his serious medical needs on the part of the JCF Defendants. Plaintiff makes no specific allegations against Defendant Whitmer.

Plaintiff seeks $2,000,000 in punitive damages and injunctive relief as follows: "MDOC shall make a change to Policy Directives that will MANDATE healthcare staff, upon being made aware by a prisoner that policy, or a constitutionally protected right, is being violated, must take

the issue to the HUM **immediately** and the HUM shall be **obliged** to look up policy in question and address the issue immediately." (Compl., ECF No. 1, PageID.6–7 (emphasis in original).)

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants' action (or inactions) violated MDOC policy, Michigan statutes, the Michigan Constitution, and the United States Constitution—presumably the Eighth Amendment that prohibits state actors from being deliberately indifferent to an inmate's serious medical needs.

### A. Official capacity claims for damages

Plaintiff sues all of the Defendants in their respective official capacities. Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick*

*v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's damages claims against the State of Michigan, by way of his claims against Defendant Whitmer in her official capacity, and his damages claims against the MDOC, by way of his claims against the JCF Defendants in their official capacities are properly dismissed on grounds of immunity.

**B.     Official capacity claims for injunctive relief**

Ordinarily, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). As the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Although Plaintiff seeks prospective

7

injunctive relief, he does not allege an ongoing violation of federal law here. Therefore, he has failed to state a proper claim for relief under *Ex Parte Young*.[2]

### C. Liability of the JCF Defendants for federal constitutional violations

Even if Plaintiff sued Defendants in their personal capacities (or if he alleged an ongoing constitutional violation), his allegations would still fail to state a claim.

#### 1. § 1983 does not provide relief for violations of state law

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Thus, Plaintiff's claims that Defendants violated MDOC policy, state statutes, or the state constitution do not give rise to a claim under § 1983.

#### 2. Eighth Amendment deliberate indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

---

[2] Moreover, "under the *Ex parte Young* doctrine, state officer may ordinarily be sued in an official capacity for injunctive relief, but only for those officials' violations of federal law." *McNeilus Truck and Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 438 (6th Cir. 2000) (citing *Will*, 491 U.S. at 71, n.10). Because Plaintiff has made no allegations that Defendant Whitmer violated federal law, he cannot maintain an official capacity suit for injunctive relief against her.

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff

9

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a. Defendant Sirena Landfair

Dr. Gooding ordered the x-ray on December 8, 2021. When Plaintiff had not been sent for the x-ray the next day, he instructed his wife to call Defendant Landfair. Defendant Landfair informed Plaintiff's wife that there was an order for an x-ray, but that no appointment had yet been

11

scheduled. The next day, Plaintiff told his wife to call Defendant Landfair again. It is not clear whether Plaintiff's wife spoke to Defendant Landfair, but Plaintiff reports that his wife "was told that she couldn't be given any information." (Compl., ECF No. 1, PageID.5.)[3] That is the extent of Defendant Landfair's involvement per Plaintiff's complaint allegations.

The documents attached to Plaintiff's complaint disclose some additional involvement. Plaintiff attaches a Clinical Encounter-Administrative Note that reveals that Defendant Landfair memorialized the fact that Plaintiff would be transported to the emergency department of a local hospital for a chest x-ray. Additionally, Plaintiff's grievance (JCF2112 22241F1) indicates that Plaintiff's wife attempted to call Defendant Landfair again on December 14, but Landfair's voicemail was full. (ECF No. 1-1, PageID.36.)

Defendant Landfair responded to Plaintiff's grievance on December 23. Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). But Defendant Landfair's response was simply a factual recitation of what happened. She reported that Plaintiff was evaluated by nursing on December 11, the on-call medical provider was consulted, Plaintiff was sent to the emergency department, and Plaintiff was seen for a follow-up visit with the medical provider on December 14. Plaintiff was provided with a treatment plan and orders for oral steroids at that time. (ECF No. 1-1, PageID.37.) Plaintiff claims he was not seen by a provider on December 14; rather, he was just called to medical to pick up the

---

[3] The documents Plaintiff attaches to his complaint indicate that it was not Defendant Landfair who spoke to Plaintiff's wife. Instead, it was Defendant Cummins. (Clinical Encounter-Administrative Note, ECF No. 1-1, PageID.17–20.) Defendant Cummins informed Plaintiff's wife that Plaintiff had not completed an "ROI," presumably a release of information form. Cummins notified an officer on Plaintiff's unit to get Plaintiff to sign an ROI. Even absent a completed ROI form, however, the note indicates that Cummins informed Plaintiff's wife that Plaintiff was not symptomatic. Plaintiff does not allege that he was symptomatic at that time.

oral steroids. (*Id*., PageID.38.) Plaintiff also claims that the delayed response violated MDOC policy which called for a follow-up visit the next business day.

Plaintiff fails to indicate any action (or inaction) by Defendant Landfair that would support an inference that she was deliberately indifferent to Plaintiff's serious medical need. Reviewing all of the materials Plaintiff has provided, his doctor ordered an x-ray to rule out pneumonia. The x-ray did not occur the next day, but there was no suggestion that Plaintiff was suffering pneumonia symptoms. When Plaintiff complained of shortness of breath on December 11, he was transported to the emergency department that afternoon so he could get an immediate x-ray.

It is not at all clear that Plaintiff suffered a serious medical need of which Defendant Landfair was aware and that Defendant Landfair deliberately disregarded. Plaintiff blames Defendant Landfair for the delays in receiving the tests and treatment Plaintiff wanted at the time Plaintiff wanted them, but there are no facts alleged to support an inference that Landfair, to the extent she was responsible at all for those delays, was anything more than negligent. Indeed, Plaintiff describes the failures in care as "negligence." (*Id*., PageID.36, 40, 42, 46.) *Farmer* holds that mere negligence is not enough.

### b. Defendant Sara J. Cummins

Plaintiff makes no factual allegations about Defendant Cummins in the body of his complaint. The documents he attaches to his complaint also reveal only very limited involvement in Plaintiff's treatment. Defendant Cummins responded to Plaintiff's wife's telephone call on December 10. *See supra* note 2. Defendant Cummins also responded to some of Plaintiff's grievances at Step I. Again, however, § 1983 liability may not be imposed simply because a person denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

Plaintiff fails to allege any facts that support the inference that Defendant Cummins was aware that Plaintiff had a serious medical need and then deliberately disregarded that need. Plaintiff has failed to state an Eighth Amendment claim against Defendant Cummins.

### c. Defendant Karmen Bussell

Plaintiff makes no factual allegations against Defendant Bussell in the body of his complaint. Defendant Bussell reviewed Defendant Landfair's responses to two of Plaintiff's grievances. (ECF No. 1-1, PageID.36–37, 40–41.) Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Plaintiff has failed to state an Eighth Amendment claim against Defendant Bussell.

### d. Defendant Patricia Lamb

Plaintiff makes no factual allegations against Defendant Lamb in the body of his complaint. Defendant Lamb responded to Plaintiff's grievances at the second step of the grievance process. (ECF No. 1-1, PageID.39, 43, 47, 51.). Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300. Plaintiff has failed to state an Eighth Amendment claim against Defendant Lamb.

### e. Corrections Officers

Plaintiff also sues three corrections officers who, apparently, played some role in determining the timing of Plaintiff's trip to the emergency department on December 11. The decision to send Plaintiff to the emergency department was made at some time after 1:20 p.m. on December 11. (Compl., ECF No. 1, PageID.5.) But Plaintiff was not taken to the emergency department until 6:00 p.m. (*Id*., PageID.6.) Plaintiff states that, according to Defendant St. Charles, the initial delay was the result of waiting for an officer to come back from the hospital. (*Id*.) Then

14

there was additional delay because St. Charles required Plaintiff to wait until chow lines and unit med lines were complete.

Plaintiff does not disclose what role the Unknown Captain or Unknown Lieutenant played with regard to the delay. Indeed, he does not mention them at all in the body of the complaint and there is nothing in the documents attached to the complaint that sheds any light on the role of these unidentified parties with regard to the four-hour delay on December 11. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. See *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because

15

Plaintiff fails to provide any information regarding these defendants, his allegations fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff's allegations attribute some, if not all, of the four-hour delay to Defendant St. Charles. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *5 (6th Cir. Feb. 24, 2017) (internal quotes omitted, quoting Napier v. Madison Cnty, Ky., 238 F.3d 739, 742 (6th Cir. 2001)). Plaintiff offers no facts that support the inference that the delay had any detrimental impact—the x-ray ruled out the condition that concerned the doctor and Plaintiff, pneumonia. Plaintiff was treated with steroids for his asthma-like symptoms and released.

But even if Plaintiff had alleged some detriment, his allegations still fall short with regard to the subjective element of a deliberate indifference claim. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (custody officer entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell*, 867 F.2d at 959).

Plaintiff's medical providers did not deem his situation emergent. (ECF No. 1-1, PageID.39, 47, 50, 54.) Certainly, the doctor sent Plaintiff to the emergency department, but that was apparently the only place to obtain the diagnostic x-ray on a Saturday. Plaintiff was not sent for emergency treatment. Under those circumstances, the fact that Defendant St. Charles permitted a delay of four hours in Plaintiff's transport does not support the inference that he deliberately disregarded a substantial risk of serious harm to Plaintiff. Accordingly, Plaintiff has failed to state an Eighth Amendment claim against Defendant St. Charles.

### III.  State law claims

It appears that Plaintiff seeks to invoke this Court's supplemental jurisdiction over claims for violation of prison policy, state law, and the state constitution. The Court declines to exercise jurisdiction.

Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio,*

17

*Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will dismiss Plaintiff's state law claims without prejudice because the Court declines to exercise supplemental jurisdiction over them. A judgment consistent with this opinion will be entered.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).


Dated: August 1, 2022  /s/ Ray Kent
                       Ray Kent
                       United States Magistrate Judge